Thank you, your honor. Charles Messer for the Defendant and Appellant, Allied Collection Services. I'd like to reserve five minutes for rebuttal. I've argued more than a dozen cases before this court, but I'm going to start by doing something I've never done, and that is address an issue not in the briefs, and that's subject matter jurisdiction. Because in this unusual case where we have a judgment for $250 in statutory damages and $105,000 in attorney fees, and a special verdict finding by the jury that the plaintiff, Carla Gonzalez, sustained zero actual damages, the issue of standing in subject matter jurisdiction kind of wept off the page as I read the briefs and prepared to argue today. Because the Ninth Circuit has, because this is really, it's a misrepresentation case. Ms. Gonzalez says, well, I got a writ of garnishment at work that had a false claim. Claimed that the amount that was owed was about $5,000, and that was false. And the record shows that the writ was prepared on July 28th, and the amount was true on that date. There is some evidence that payment was made in August. The writ was served on her employer on September 1. And so her argument is, the date I got it, this was a false claim by a debt collector. And so that's actionable under 1692 ENF of the Fair Debt Collection Practices Act, the FDCPA. Okay, and so the agency disputed that and said, no, the amount was paid back. And it really, the amount was true, and as the court knows from the briefs, Allied contends that the summary judgment on liability in favor of Ms. Gonzalez shouldn't stand under Rule 56 because the court failed to construe the evidence before the court in favor of the opposing party. But that issue's been well briefed, and I'll get to that. But I thought the standing issue was important, and perhaps the court would want supplemental briefs on this issue. Because about 11 years ago, in Donahue versus... Let me stop you there and say that we always have to consider jurisdiction, so I don't quarrel with that. Although I think if you really wanted to raise an issue like this, it probably would have been useful to have done so sometime before the beginning of oral argument. But be that as it may, who is it you allege lacks standing here? Carla Gonzalez, the plaintiff. And how is it she lacks standing given that she's got a judgment in her favor, albeit for a modest amount of money, but she has a judgment in her favor? Because in the Donahue case, which was a FDCPA case in which the plaintiff said that the collector misrepresented the amount of money that I owed, the 9th Circuit ruled that unless those misrepresentations are material, unless the plaintiff relied on them... That's an argument that goes to the merits. That is not an argument that goes to standing. There's no doubt that she claimed an injury. She did. So how is that a standing argument? Because the jury found that she sustained no actual damages. The Supreme Court told us earlier this week that you can have nominal damages, and in this case we have statutory damages. But that's a merits determination. We don't decide at the end of the case, just because plaintiff loses, that the court never had jurisdiction in the first place. And that seems to be what you're saying to me. It is, Your Honor, and frankly, I beg to differ. You can beg all you want, but you better point us to some authority that supports that proposition, because I don't think it's the law that every time plaintiff doesn't prevail, the courts lack standing and the case gets erased from the get-go. That's simply not the law. Well, the case I rely on is Donahue v. Quick Collect at 592 Fed 3rd, 1027 at pages 1033 and 1034. And I notice on the volume number, we know that case was available for years before the briefs were filed in this case. But it still should have been the subject of a 20HA letter if you seriously want us to entertain it. Well, give me the citation again. Sure, 592 Fed 3rd at pages 1033 to 1034. Why don't you move to the merits, counsel? Yes, thank you, Your Honor. On the merits, we believe that the district court failed to construe on the plaintiff's motion for summary judgment on liability under the FDCPA that the district court failed to construe the evidence in favor of the opposing party who was allied. Certainly, if this was an appeal from a jury verdict on a trial, the appeal would be a dead man walking. Because the evidence is inconsistent. We have allied records that said the payment was made. We have allied testimony and the other record at page 512 of the record that says the money was paid back and never credited. And so the amount of the writ was correct. I'm sorry, counsel. What exactly is it at page 512 of the record that you say says the money was paid back? It is a business record of the company called that begins with an I. And that says that the money was credited back on September 7, 2016. Right, but you just said paid back. And I'm looking, for example, at the declaration of Ms. Duff who says that the debt owed at ER 901, the debt owed to Dr. Mendoza, we received the iron workers payment on 8-8-2016 following receipt. We wrote a check to allied collection services on 8-15. I see the 30B6 depot of allies says basically the same thing. And allies business record shows that it received the check. So what does it matter that a month or two later it has a business record reversing that entry? Why is that relevant to whether seeking to garnish that amount is an unfair debt collection practice? Because writs of garnishment do not, for example, I'll say it's $5,000. It's $5,000 and change. But writs of garnishment do not take $5,000. Under Nevada law, they take 12.5% maximum of an employee's wages. And so there was no practical way that anyone would take $5,000 from Carla Gonzalez between September 1 and September 7 or at any time. And so even if the amount was wrong, it's immaterial. Let's get past even. We know the amount was wrong because on the date the writ was filed, the money was still being held by the doctor's office and allied somewhere between them. So we know the amount was wrong. You're trying to say we should pay attention to the fact that money was later paid back. And I'm not sure why we should be paying attention to the fact that money was later paid back. If your client, the doctor, pays it back, how is that the plaintiff's problem? The point I'm trying to make, Your Honor, is that the way a writ of garnishment works You're not answering my question. Is that what you're telling me? You don't care about what I'm asking about. You're telling me how a writ of garnishment works. And I'm not sure why we should care about that either. But how about the question I posed to you? Which you probably don't remember because you weren't thinking about my question. Let's try this again. On the date the writ was filed, September 1, the money had been received by, I've forgotten the doctor's name, but by the doctor's office. So why is it that the plaintiff should still be expected to owe for the money that the doctor had? Now the doctor may later decide to send it back for reasons I really don't understand. But why is that the plaintiff's problem? On the date the writ was filed, the amount was wrong. Is that correct? On the date the writ was served, on the employer, the amount was erroneous. Yes, it was. Okay, well, why isn't that the end of the story? Because it's not material, Your Honor. Because under the way garnishments work and because of the Donahue case, it's not a material violation of the FDCPA. Counsel, so a garnishment is a threat to take money, yes? When you get a garnishment order, you are threatening to collect money. Correct. And 1692E5 says, the following conduct is a violation. The threat to take any action that cannot legally be taken. Here they are threatening to collect an amount of money that they cannot, at the time they're doing it, legally collect it because it's too much. Why is this not a per se violation under a strict liability statute of 692E5 saying we're trying to collect this amount of money, we're threatening to do it, and we can't? Why isn't the district court legally correct? Because under the Donahue case, there has to be reliance, there has to be materiality, there has to be some action, some actual tangible damage sustained by Ms. Gonzalez for there to be an actionable claim under the FTCPA, and that's consistent with the Seventh Circuit in the Hahn case, which is cited in the Donahue case that I referred to before. Does the Donahue case discuss 1692E5, which talks about a threat? It does not. It talks usually about, you know... Because an action may or may not involve some material issue. But a threat is, I'm going to take an action. A threat, by definition, means an action hasn't been taken. So are you saying that if the threat to do something involves an amount that isn't a huge amount for the person who's subject to garnishment, then there's no violation of the statute and the judge has to make a factual determination of whether the wrong amount matters to the particular garnishee? Yes, Your Honor. And Donahue was a letter case. It was not a garnishment case, just to be clear with the court. It was a letter. And this is a wage garnishment. But we contend that the same principles should apply. I'd like to briefly address the... Actually, I've been motivated to look at Donahue, and it says there was a complaint. The complaint did not violate the statute. It correctly calculated the total debt Donahue owed. The problem was that it apparently mislabeled something, but the total amount was correct. And we've just established in this case the total amount claimed in the garnishment was not correct. So how does Donahue establish the proposition for which you're arguing? Donahue said the amount was correct, but the waive of principle and interest was misleading and false. And the court said that's not... Mislabeling of it. But it made the clear point that the complaint correctly calculated the total debt Donahue owed, accurately stated the principle owed, accurately listed the total non-principle amount owed, inclusive of interest and finance charges. The problem was that they labeled that last thing incorrectly, but the amount was correct. And in our case, you've already acknowledged the amount was not correct. So I repeat, how does Donahue establish the proposition for which you've argued? And taken almost all of your time. Well, I've tried to answer the court's questions, Your Honor, and Donahue is the Ninth Circuit's best explanation, enunciations, about what are the contours of liability for misrepresentations under 1692 E and F of the FDCPA. And again, we can... So Donahue establishes that if the amount is correct, that's okay. But in our case, the amount is not correct. So, okay, if that's what you tell us is the case we should look at, I've got to tell you that so far, I'm not very persuaded. I know you wanted to save some remaining time, Counsel, so you're down to about a minute. Would you like to save balance? I will save time, Your Honor. So I will defer to my colleague, Mr. Kine. Thank you, Your Honors. Good morning, and may it please the Court, my name is Michael Kine, appearing on behalf of the family. This report should be affirmed. First, the trial court correctly granted summary judgment against Allied for violating the FDCPA since Allied attempted to garnish the felon's wages after at least a portion of the debt had already been paid. Also, your voice is fading in and out a little bit. If you could get a little closer to the microphone, I think that would improve the sound quality. Allied's appeal strategy is to try to create confusion about what happened where none exists. The record overwhelmingly supports the findings by the district court. Before addressing the previous evidence that Allied relied on, I'd like to provide a quick timeline of concrete evidence relied on by the district court. The consumer's insurance paid Dr. Mendoza in July 2016. Dr. Mendoza received the payment in August. Allied posted the payment in its own computer system by August 2019. On September 1, Allied filed a wit to collect the full balance, including the amount that was paid to Dr. Mendoza. The district court relied on the undisputed evidence, a copy of the check, which is at 845. Mendoza's record, which is at 847, was produced by Allied in the case. Allied's own records at 483 and 496 show this timeline. Allied's 30B6 deposition, where Allied admitted this timeline. Counsel, once the district court granted summary judgment in your favor on liability, you were entitled to an award of up to $1,000. Is that right? Statutory damages plus actual damages, correct. So at that point, you were going to get presumably something up to $1,000. I think we still have to have proven statutory damages. Right, but I mean the liability entitles you to statutory damages. The trial was about emotional distress, yes? The trial was about both emotional distress and statutory damages. So what's not included on the record here is a trial transcript. And what's important to note, and the reason for that is probably because it just simply doesn't support Allied's position, and that's why they didn't include it. But what might not be noted in the brief is that Carla Gonzales did not hold a trial. I'm sorry, she was not what I'm having trouble hearing, sorry. Let's stop the clock for a minute. Do you have headphones? If you put headphones on, I think that might help. I do. Is this any better? Better. Yeah, so Carla Gonzales was not the only witness at trial. Allied's 30 v. 6 testified as well, and that's important because that does not go to Carla's emotional distress. That simply goes to the amount of statutory damages, and that was important to the audience and to the court. And the question of how much statutory damages is simply given to the jury and to the jury in court. Right, now you're fading out again. Say that last part again. Well, I think the main point I'm trying to say is that Allied also testified at trial. All right, so, counsel, let me ask you to address my concern in this case, and it's with regard to your attorney's fees award. The district court, in looking at the Kerr factors, says the consideration of factors 8 through 12 doesn't present the type of rare circumstance to justify a departure from the Lodestar calculation. And then with regard to factor 8, time involved and results obtained, the district court said this favors the award for Gonzales' counsel. So here's my problem with that. Success is an important factor under our case law. You basically lost at trial. Yes, the jury recommended $1,000, and the judge gave you $250, but you were seeking substantial general damages, and you got nothing. So why didn't the district judge abuse its discretion in not taking into account the fact that, essentially, you lost on emotional distress at trial in deciding whether or not to reduce your attorney's fees award for the time spent at trial? To be clear, the amount of damages sought for emotional distress was never specified. It wasn't a substantial amount. There was absolutely no dollar amount ever given to the jury or requested. But you got zero. Correct. That's correct. Before the trial, summary judgment was about liability only. The trial was about damage, and we asked for actual damages of statutory, and we received a full amount of statutory damages. And the case, this court's case, Evan, the courts, that courts should not reduce the amount of attorney's fees simply because the plaintiff did not receive everything requested. Well, you didn't receive everything requested. You received nothing with regard to emotional distress. And if you look at the hours being claimed, certainly beyond the date of the summary judgment is the liability. And then the defendant suggested another date. Offhand, I've forgotten what that date was. But the lion's share of the hours claimed appeared to have been for the effort that produced a zero award for actual damages. And under the lodestar factors, we're supposed to be looking at that, aren't we? So how can we sustain the award of paying an attorney, even slightly trimmed by the district court, paying an attorney for hundreds of hours spent producing a dry hole? So three points on that. First off, the case law is clear. There is no proportionality on here. I'm not talking about proportionality. I'm talking about hours spent that turned out to be unproductive. I agree with you with regard to proportionality, and I think that may be where the district court got off track. Because, yes, you can win a nominal damage award of $1 or six peppercorns or whatever, and you can still sustain an attorney's fee award based on that. But in this case, your client, the counsel for your client, invested hundreds of hours in pursuing a claim that did not lead to a successful result. And the lodestar factors require us to consider that, don't they? I think that for the FDCPA, when it comes to that, I think the case McGowan v. King, which we cite in our brief, which is a Fifth Circuit case, becomes very relevant. In that case, the Fifth Circuit found that simply because a defendant chooses to fight really hard and push the plaintiff to really prove its case up until the end, that does not mean that the plaintiff did not have to do those things. And under the FDCPA, under Apwerky and Evan, they recognized that Congress took the private attorney general approach. So, in other words, plaintiff's counsel had to do all of these things in order to get evidence. The difficulty here, counsel, is that the district court has to consider the degree of success in determining the appropriate fee award. And I didn't see any indication in the record that the district court considered that. It reduced the hours due to inefficiencies and redundancies and clock building methods and so forth. But is there anything in the record that I may have missed that shows the district court specifically considered the degree of success in determining the appropriate amount of fee? And if so, if you can give me a record citing that. Yes. So, looking to district court's ruling, I don't think that's specific. So, the court does go through, on the record at 42, about the argument that these cases similarly end up for lower amounts. And the district court specifically distinguishes other cases, recognizing that plaintiff's counsel did have to do all of this work in this case, specifically because defendants pushed the case that hard. I'm sorry, where does the district court say you had to do all this work because the defense pushed this so hard? I'm looking at ER 42, and I don't see that there. Well, so at ER 42, the court recognizes the defense argument about how these cases normally end up with lower dollar amounts, and the court recognizes that those cases are distinguishable because of those reasons. Well, that still doesn't speak to what we've cited as our concern, which is that it appears that district court has awarded fees for hundreds of hours of attorney time that did not appear to produce a successful result of any kind. Because the end result of the trial was not a positive one for your client. Well, the end result, as Evan noted, was a positive result because first off, she got the vindication, and she prevailed on the underlying issue that the doctor was paid, which is something Allied has been disputing, including to a degree, up until today. And second of all... You had a summary judgment in your favor already as to liabilities. We don't have the trial transcript. I don't know what all was covered, but I'm not sure how it was necessary to relitigate something that already appeared to have been awarded to you by the district court. Correct. The trial was not about liability, but it did give Gonzalez the opportunity to explain it to the jury and to receive an award. Prior to the trial, there was no award, and the only way to get that award was through a jury trial, and that's because of the defendant. I'm sorry, counsel. So you're saying that based on the summary judgment award that you had prevailed on liability, that you could not get a statutory damage award from the district court without a jury trial? Is that what you were saying? Well, it was certainly not offered by the defense. They certainly could have made an offer of judgment for $250 or for $1,000. But as I understand it, the jury made an advisory finding on what the amount of the statutory damage award was, but that's always up to the court. Am I missing something there? That was a question of whether it's up to the court or to the jury, and the district court ruled that she still wanted the hearing to occur. To put it in another way, regardless of whether it was a jury trial or some other way, that hearing would have occurred. At the same amount of time, the judge required plaintiff's counsel to put on the hearing and to prove up to that $1,000 statutory damages, which is exactly what they did. They put on Carly Gonzalez as a witness, and they put on Allie 30B6 as a witness in order to prove the statutory damages as well. Are you telling us that your client could not have applied to the district court for an award of statutory damages, which the court ultimately decided was in its update to determine, and forego the claim for actual damages? I'm sure it could have been done. Then why was the trial necessary? Because if the trial was aimed at obtaining actual damages, that's the source of our problem, because the result of that trial was a zero for actual damages. You're basically acknowledging to me that the trial was unnecessary. If that's the case, why should attorney's fees be awarded for the hundreds of hours of time spent pursuing a trial that was unnecessary and unsuccessful? I'm not conceding that it was unnecessary. Again, the trial was about damages. The actual damages, emotional damages amount was never specified, and plaintiffs saw up to $1,000 statutory damages. Then let me go back to the question I thought I had posed, but perhaps was not clear. Is there anything that prevented your client from asking the district court to award statutory damages? End of story. No, but I would want to add that in reality of how it played out, when plaintiff did, when Gonzalez did apply for that $1,000, the district court asked for the jury to provide the advisory opinion. In other words- That suggests that the court would have required a jury trial, which was going to be necessary because of your client's pursuit of actual damages. If you hadn't been pursuing actual damages, there would have been no need from the jury trial, as best I can tell, and hence no need for the hundreds of hours spent pursuing unsuccessfully a claim for actual damages. Where is my understanding not correct? Because the record doesn't support that, that there would not have been a jury trial if not for plaintiffs seeking actual damages. We don't have the transcript, and the only thing that we do have is knowing that Judge Dew did require the jury trial on statutory damages. Well, where did she require the jury trial on statutory damages as distinguished from, I'm going to have to have a jury trial because plaintiff continues to pursue actual damages, and so I'll get an advisory opinion, but it's my responsibility. I've got to tell you, whenever I've seen that situation before, the trial judge doesn't commission a jury trial over a possible $1,000 of statutory damages. The district court simply decides itself, and I don't understand what would have prevented the district court from doing that here, and I don't see anything in the record that suggests the district court would have required a jury trial but for your client's request for actual damages. Can you point me to anything that would disabuse me of that notion? I see my time is up. May I respond? Yes. I agree that the record doesn't specifically say that. However, the record also doesn't say it the other way. We simply don't know, but what we do know is that the jury trial was on both statutory damages and actual damages. My time is up. Unless there's any other questions, I'd like to thank you both. Thank you, counsel. Mr. Messer, you have a little bit of time left. Yes, Your Honor. Just quickly on the fee issue, we contend that the district court did abuse its discretion by failing to consider factor eight of the current factors, the result, because the result of the trial was essentially a complete victory for the defense. And we know that from the special verdict form and from page 42 of the district court's order, page 42 on the record, where the court says the court does not need to consider factors eight, factor number eight. And so that's an abuse of discretion. The trial was not successful for the plaintiff or the appellee, and for that reason, the fee award should be vacated and the matter remanded to the district court for a reanalysis of the fee award. All right. Thank you very much, counsel, both sides for your argument today. The matter is submitted for decision by the court.
judges: Clifton, Nguyen, Bennett